UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

DEBORAH LACKEY,                        )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        Cause No: 1:09-cv-363 JD
                                       )
BIOMET INCORPORATED,                   )
                                       )
                Defendant.             )

**<u>Opinion and Order</u>**

**I. Procedural History**[1]

On December 29, 2009, Plaintiff, Deborah Lackey ("Lackey"), filed her Complaint in

this Court, *pro se*, alleging discrimination on account of her gender, age, and religion and

alleging retaliation on account of her reporting of an asserted disability. *See* DE 1. On March 12,

2010, Lackey filed a motion for discovery, wherein Lackey appears to seek a judicial order

regarding the preservation of electronically stored evidence. *See* DE 17. On March 16, 2010,

Magistrate Judge, Roger B. Cosbey, held a pretrial conference, which Lackey attended *pro se*.

*See* DE 18. At the hearing, Judge Cosbey denied Lackey's discovery motion and set the

discovery deadline in this case for December 15, 2010. *See* DE 18. On June 16, 2010, this case

was reassigned to the undersigned for all purposes. *See* DE 25. On December 15, 2010, the last

day of discovery, Lackey filed a motion to extend the discovery deadline. *See* DE 25.

On February 8, 2011, while Lackey's motion for extension of discovery was being

briefed, Defendant, Biomet Incorporated ("Biomet"), filed a motion for summary judgment. *See*

---

[1] This case has an extensive procedural history, which the Court considers necessary to discuss in detail to
fully explain the Court's conclusions.

DE 31.  Along with its motion, Biomet additionally filed a notice to Lackey regarding Lackey's

duties under Fed. R. Civ. P. 56 and N.D. Ind. L. R. 56.1, consistent with the requirements of

Local Rule 56.1(f).  *See* DE 33.

Shortly, thereafter, on February 17, 2011, Magistrate Judge Cosbey denied Lackey's

motion to extend discovery.  *See* DE 36.  In so ruling, Judge Cosbey noted that Lackey had

waited until the last week of discovery to serve her discovery requests and that such requests,

numbered in the hundreds and were improperly sent to several, non-party Biomet employees

directly.  *See* DE 36 at 2-3.  Judge Cosbey concluded that Lackey had failed to establish good

cause for an extension of the discovery period, opining that Lackey had "inexplicably stood by

for nearly nine months while Biomet did all the discovery".  *See* DE 36 at 5.  Further, Judge

Cosbey rejected Lackey's contention that she was waiting for the Court's conclusion regarding

her prior discovery motion, noting that Lackey's motion was denied at the March 16th hearing;

that Lackey had acknowledged the Court's denial of her motion on the record; and that the

Court's docket entry further reflected the denial of the motion.  *See* DE 36 at 5-6.  Highlighting

that *pro se* litigants have a duty to follow the procedural rules, despite their status, Judge Cosbey

denied Lackey's motion for extension of discovery.  *See* DE 36 (citing *Pearle Vision, Inc. v.

Romm*, 541 F.3d 751, 758 (7th Cir. 2008); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir.

2006)).  However, Magistrate Judge Cosbey, nevertheless, left open the possibility for Lackey to

file a motion for limited discovery under Fed. R. Civ. P. 56(d), provided that she could establish

good cause to justify the motion and could indicate what material facts she anticipated

discovering.  *See* DE 36 at 6-7.

Thereafter, Lackey failed to file either a response to Biomet's summary judgment motion, within the time specified by the Rules, or a Rule 56(d) motion for additional discovery. Instead, on March 23, 2011, Lackey filed a notice of appeal. *See* DE 38 (Lackey's filing was made in the form of a letter and failed to actually include a copy of the "NOTICE OF APPEAL").

On March 24, 2011, recognizing Lackey's *pro se* status, the undersigned afforded Lackey a second opportunity to respond to Biomet's motion for summary judgment, extending the deadline until April 15, 2011. *See* DE 39. Further, on April 4, 2011, the Court sought clarification regarding Lackey's "notice of appeal" and permitted Lackey until April 11, 2011 to, instead, file a motion for review of the Magistrate Judge's order. *See* DE 40.

On April 11, 2011, Lackey filed a motion for review of the Magistrate Judge's order. *See* DE 41. Therein, Lackey merely reasserted her contention that she did not timely complete discovery because she was waiting for resolution of her prior discovery motion, regarding privileged information. *See* DE 41. *Compare* DE 26 at 1-2.

On April 14, 2011, the undersigned denied Lackey's motion for review of the Magistrate Judge's prior order. *See* DE 42. In so ruling, the undersigned confirmed that Magistrate Judge Cosbey had previously ruled on the Lackey's discovery motion at the March 16, 2010 scheduling conference; that Lackey had acknowledged the ruling on the record; and that Magistrate Judge Cosbey's denial was further reflected in a docket entry on the same day. *See* DE 42 at 2-3. Further, the undersigned affirmed Magistrate Cosbey's determination that Lackey had been dilatory in completing discovery, inexcusably waiting until the last week of discovery to file her first discovery request. *See* DE 42 at 3. Finally, the undersigned rebuffed Lackey's

contention that Magistrate Cosbey lacked jurisdiction to rule on Lackey's motion for extension of discovery. *See* DE 42 at 3-4 (citing 28 U.S.C. 636(b)(1)(A); N.D. Ind. General Order 2007-10).

The undersigned then afforded Lackey a *second* extension of time to respond to Biomet's summary judgment, extending the deadline until April 27, 2011. *See* DE 42 at 4. In so doing, the undersigned indicated that the extension was to be the final one allowed. *See* DE 42 at 4. Further, the undersigned warned Lackey that failure to respond by the deadline would result in Biomet's factual assertions being taken as true and uncontested and could result in summary judgment being granted in Biomet's favor. *See* DE 42 at 4 (citing *Timms v. Frank*, 953 F.2d 281, 285-86 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982)).

On April 18, 2011, Lackey filed a motion for discovery pursuant to Federal Rule of Civil Procedure 56(f).[2] *See* DE 43. On April 20, 2011, the undersigned referred the motion to Judge Cosbey for ruling because Magistrate Judge Cosbey had specifically left open the possibility of such a filing in his previous order. *See* DE 45; DE 36 at 6-7. On May 19, 2011, Magistrate Judge Cosbey denied Lackey's Rule 56 motion. *See* DE 48. In so ruling, Judge Cosbey indicated that Lackey had failed to identify the material facts she anticipated discovering and had failed to demonstrate that she had not been dilatory in pursuing discovery, two critical requirements for discovery under Rule 56(d). *See* DE 48 at 4-5. *See also Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) (noting that a court may deny a continuance of summary judgment briefing for discovery purposes, if the movant was dilatory in pursuing discovery); *Neal v. Dana Corp*, 2002 WL 32144315 at *2 (N.D.Ind. 2002) (noting that

---

[2] Pursuant to the 2010 Amendments to the Federal Rules Civil Procedure, subdivision 56(f) was incorporated into subdivision 56(d), "without substantial change". *See* Fed. R. Civ. P. 56, 2010 Amendments.

a party seeking additional discovery under Rule 56[d] must identify the material facts she anticipates discovering). Judge Cosbey then extended the deadline for Lackey to file a response to Biomet's summary judgment motion a *third* time, until June 2, 2011, and warned Lackey, again, regarding the consequences of failing to timely file a response brief. *See* DE 48 at 4-5

However, on June 2, 2011, Lackey, once again, failed to file a response brief. Instead, Lackey renewed her motion for discovery under Rule 56(d). *See* DE 49. Therein, Lackey made identical assertions to those made in her prior motion for review of the Magistrate Judge's discovery order. *Compare* DE 49 at 2 and DE 41 at 2. On June 3, 2011, Biomet filed a response in opposition, noting that the Court had substantively ruled on the contentions of Lackey's motion on numerous prior occasions. *See* DE 50. On June 6, 2011, Lackey also filed a motion for review of Magistrate Judge Cosbey's denial of her previous Rule 56 motion for discovery. *See* DE 51.

On June 7, 2011, the undersigned denied Lackey's renewed Rule 56(d) motion, noting that the Court had ruled on Lackey's discovery requests in numerous prior orders and had concluded, in each, that Lackey had been dilatory in pursuing discovery and had failed to show good cause for a discovery extension. *See* DE 52-1 at 4 ("Given the Court's repeated rulings, the Court will not further entertain Lackey's arguments in this regard."). The undersigned then afforded Lackey a *fourth* and "final" extension of the response deadline, until June 20, 2011, warning Lackey of the consequences of failing to file a response. *See* DE 52-1 at 4. Additionally, on June 7, 2011, the Court denied Lackey's motion for review of the Magistrate Judge's order for the same reasons. *See* DE 53.

In sum, Magistrate Judge Cosbey and the undersigned have considered and denied Lackey's request for additional discovery in no less than five orders. *See* DE 36; DE 42; DE 48; DE 52; DE 53. Undeterred, however, on June 20, 2011, Lackey re-filed her original Rule 56 motion for discovery, captioning the motion a response to summary judgment. S*ee* DE 54. *Compare* DE 43. On June 28, 2011, Biomet filed a reply brief, asserting that Lackey had failed to present evidence or argument to substantively oppose Biomet's motion for summary judgment. *See* DE 55. Further, Biomet argued that the Court should not consider Lackey's renewed discovery motion, given this Court's prior indication that it would not revisit the issue.

On July 8, 2011, Lackey filed a motion for interlocutory appeal of the undersigned's most recent order, which established June 20, 2011 as the deadline for filing a response brief. *See* DE 56 (citing DE 52-1).

## II. Motion for Interlocutory Appeal [DE 56]

To begin, Lackey seeks interlocutory appeal of the undersigned's order setting a response deadline. *See* DE 56. Implicitly, Lackey actually challenges the repeated orders of the Magistrate Judge, denying Lackey's requested extension of the discovery deadline and request for discovery under Rule 56(d), as well as the undersigned's affirmative review of the Magistrate Judge's decisions.

Orders certifying interlocutory appeal serve a limited function. Specifically, 28 U.S.C. § 1292(b) only allows certification of narrow issues of law for immediate, interlocutory appeal, prior to final judgment, when,

> [A] district judge . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).  The purpose of Section 1292(b) is "that if a case turn[s] on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait [un]til the end of the case." *Ahrenholz v. Board of Tr. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).  All four of the statute's conditions must be met in order to justify certification for interlocutory appeal: (1) a question of law; (2) that is controlling; (3) that is contestable; and (4) that, the resolution of which, will speed up the litigation.  *Ahrenholz*, 219 F.3d at 676.

The Court does not consider interlocutory appeal to be warranted in this instance, given that the rulings Lackey contests are discretionary denials of discovery and do not involve controlling issues of law.

Further, the Court does not consider it appropriate to revisit its prior orders regarding Lackey's discovery requests.  The Court has addressed Lackey's motions for discovery in five orders, substantively discussing the reasons for denial in four of the same.  In addition, the Court has provided Lackey with no less than four extensions of the response deadline and has warned Lackey repeatedly of the consequences of failing to file a response.  In the most recent order, the Court added that it would not consider any more discovery requests from Lackey.  *See* DE 52-1 at 4 ("Given the Court's repeated rulings, the Court will not further entertain Lackey's arguments in this regard.  Lackey's requested extension of discovery has been denied, and the Court will not revisit the issue again. As such, it is now time for Lackey to file a response brief to Biomet's motion for summary judgment.").

Despite these repeated warnings, Lackey has failed to provide the Court with a substantive response to Biomet's motion for summary judgment.  Consequently, the Court

considers it appropriate to evaluate Biomet's motion for summary judgment on the record provided. For the reasons stated below, the Court considers summary judgment to be appropriately granted in Biomet's favor. As such, should Lackey desire further appeal, she may do so, not pursuant to an interlocutory appeal but, rather, as an appeal from a final order.

### III. Facts[3]

In 1989, Lackey was hired by Biomet as a Quality Control Inspector. *See* Lackey Deposition, DE 32-1 at 4-5 (hereinafter referenced by DE citation only). While employed at Biomet, Lackey changed departments, moving from Quality Control to Domestic Shipping, International Shipping, and, finally, to International Customer Service. *See* DE 32-1 at 5. In her last position, as a Senior International Customer Service Representative, Lackey was responsible for "communicating with international customer and sales groups to effectively order product and resolve issues related to product availability, product orders, pricing, invoicing, and logistics of shipping product." *See* Schwartz Aff., DE 32-2 at 2-3 (hereinafter referenced by DE citation only). While employed in this position, Biomet's International Customer Service Department was primarily staffed by women. *See* DE 32-1 at 5.

---

[3] Despite notice from Biomet regarding Lackey's obligations under Fed. R. Civ. P. 56 and despite this Court's repeated warnings regarding the consequences to Lackey should she fail to submit a substantive response to Biomet's motion for summary judgment, Lackey failed to submit either a response or evidence to support her claims. Consequently, consistent with this Court's prior warnings and Fed. R. Civ. P. 56, the following facts are gathered almost exclusively from the evidence submitted by Biomet and are presumed to be uncontested by Lackey.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See* Fed. R. Civ. P. 56(e)(2). *See also* N.D. Ind. L.R. 56.1(b) (noting that a party opposing a motion for summary judgment must submit: (1) a response brief, containing a statement of genuine issues of material fact; and (2) evidentiary materials that the responding party contends give rise to the disputes).

Between the fall of 2006 and the time of her termination, Lackey's immediate supervisor was Katrina Manwaring ("Manwaring"), International Customer Service Manager for Biomet.[4] *See* DE 32-1 at 8; DE 32-2 at 1. *See also* Manwaring Aff., DE 32-2 at 24 (hereinafter referenced by DE citation only). Diana Schwartz ("Schwartz"), Director of Distribution Services for Biomet, was Manwaring's supervisor. *See* DE 32-2 at 1.

Lackey contends that, prior to her termination, Manwaring singled her out for "harassment".[5] *See* DE 32-1 at 17-18. In particular, Lackey asserts that Manwaring would repeatedly threaten her with disciplinary write ups, would often search through her emails, and would disproportionately assign Lackey to shipping assignments. *See* DE 32-1 at 11. Lackey also contends that, at some unspecified date, Manwaring told Lackey to clean her desk, including Lackey's religious symbols. *See* DE 32-1 at 22. Manwaring admits that she told Lackey to clean her desk but asserts that she did not tell Lackey to remove her religious symbols. *See* DE 32-2 at 26.

---

[4] Lackey suggests that Manwaring had also been her supervisor, several years prior, but indicates that Manwaring temporarily left Biomet and, later, returned in 2006. *See* DE 32-1 at 22. Lackey additionally suggests that she had a poor working relationship with Manwaring at that earlier time as well. *See* DE 32-1 at 22.

[5] In Lackey's complaint and EEOC form, Lackey suggests that she was subject to "aggressive harassment" by Manwaring, after Lackey complained to Manwaring and to Biomet Human Resources of pain in her wrist, which Lackey asserts stemmed from Manwaring's assigned tasks. *See* DE 1 at 4. Specifically, Lackey states that, pursuant to the implementation of "lean management", Lackey's department was physically moved to a different location, requiring Lackey to engage in manual labor and causing pain in her wrist. *See* DE 1 at 4, 10. Lackey claims that after reporting her pain to Manwaring and receiving a tendonitis elbow strap from Human Resources, Manwaring began assigning Lackey to additional shipping tasks. *See* DE 1 at 4, 10.

Despite these assertions, however, Lackey has failed to submit any evidence, in response to Biomet's motion for summary judgment, to substantiate her claims. At this stage of the litigation, Lackey's failure to provide specific evidence, is insufficient to establish these additional assertions. *See* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or otherwise provided in this rule-set out specific facts showing a genuine issue for trial.").

In contrast, Diana Schwartz denies, in a signed affidavit, having any knowledge of either Lackey's tendonitis or that Lackey's alleged symptoms were aggravated by Manwaring's assigned tasks. *See* Schwartz Aff., DE 32-2 at 4. Similarly, Katrina Manwaring denies, in a signed affidavit, having any knowledge that Lackey's alleged symptoms were aggravated by her assigned tasks. *See* Manwaring Aff., DE 32-2 at 27.

In the summer of 2007, Biomet underwent a change in management. *See* DE 32-1 at 11-12, 21; DE 32-2 at 27. As a result, Biomet adopted a policy of "lean management", resulting in the elimination of several jobs within the company. *See* DE 32-1 at 12-13; DE 32-2 at 27. Coinciding with the change in management, Lackey asserts that Manwaring required Lackey to train a younger employee to do her job responsibilities. *See* DE 32-1 at 21. In addition, Lackey contends that Manwaring insinuated that Biomet's new management would not retain her position due to her age. *See* DE 32-1 at 11. As an example, Lackey quotes Manwaring as having said, "out with the old, in with the new". *See* DE 32-1 at 21. Lackey believes that Manwaring solely directed such comments towards her, however, and was not making similar comments to other older employees. *See* DE 32-1 at 21. Manwaring, however, disputes that she made any age-related comments to Lackey. *See* DE 32-2 at 26.

On November 15, 2007, a meeting was held between Lackey, Schwartz, and Manwaring, wherein Lackey complained to Schwartz regarding the tasks assigned by Manwaring. *See* DE 32-1 at 10-11, 27; DE 32-2 at 2-3, 25. Despite Lackey's complaints, Schwartz instructed Lackey to perform the tasks that Manwaring assigned and warned Lackey that failure to oblige could result in termination for insubordination. *See* DE 32-1 at 14, 27; DE 32-2 at 2, 25.

Lackey, however, did not seem to heed Schwartz's warning. For instance, on November 19, 2007, an email was sent to Lackey's department, stating as follows.

> Mandatory OT is no more. Your hours are 8-5. If OT is necessary, you must let me know prior to working it.

*See* DE 32-1 at 15, 27. However, the next day, November 20, 2007, Lackey reported to Manwaring that she had worked through her lunch. *See* DE 32-1 at 15; DE 32-2 at 3, 25. Lackey contends that she worked the unapproved overtime because she was unaware of the

recent email, as she had not worked on November 19th and was too busy to read her emails until the evening of November 20th.  *See* DE 32-1 at 15.

Similarly, at some unspecified date, Schwartz had informed Lackey's department that they were not to communicate internal work assignment changes to customers or other offices, in order to avoid concern regarding the quality of Biomet's customer service.  *See* DE 32-2 at 2. Nevertheless, also on November 20, 2007, Lackey replied to an inquiry from one of Biomet's foreign customer services office, via email, stating the following,

> Hi Dottie,
> Since I am not to respond. Could you give them a response.
> Thank you.
> Deb Lackey.

*See* DE 32-1 at 14, 27; DE 32-2 at 2, 17, 25.  Lackey emailed this response to Dottie Parker, another employee in Biomet's International Customer Service Department, and two Biomet customer service representatives in Biomet's Japan office.  *See* DE 32-1 at 14, 25.  In her defense, Lackey disputes that she was told not to respond to other Biomet offices and claims that her phrase "I am not to respond" was a "misquote" on her part, written in haste during a busy work day.  *See* DE 32-1 at 14-15.

On November 27, 2007, as a result of Lackey working unauthorized overtime and sending the email against company policy, Lackey was suspended for three days for insubordination.  *See* DE 32-1 at 10, 16, 26-27; DE 32-2 at 3, 26.  In the corresponding written warning, Lackey was informed that any further insubordination would be grounds for immediate termination.[6]  *See* DE 32-1 at 10, 26-27.

---

[6] Several years prior, Lackey received two, additional disciplinary reviews.  On October 20, 1998, Lackey received a warning for an unexcused absence and for frequently being late to work.  *See* DE 32-1 at 9, 24.  On September 12, 2000, Lackey received a warning for insubordination, on account of working unauthorized overtime.

Less than a month later, during the afternoon of December 18, 2007, Manwaring emailed the following message to Lackey and Dottie Parker.

> P.Rico IA's and transfers on both of your desks. I would like you both in here tomorrow at 7:00 to begin working on them. I'd like them completed tomorrow by 9:00 if at all possible.

*See* DE 32-1 at 16, 28; DE 32-2 at 3, 26. Lackey read the email but neither arrived to work at 7 a.m. nor finished her assignments by 9 a.m., as requested.[7] *See* DE 32-1 at 16-17; DE 32-2 at 3, 26. Instead, Lackey apologized to Manwaring, explaining that she did not realize that the requests were mandatory, given Manwaring's use of permissive language such as, "[i]f at all possible". *See* DE 32-1 at 17.

That day, December 19, 2007, Biomet terminated Lackey for insubordination. *See* DE 32-1 at 17, 19; DE 32-2 at 3, 23, 26. The decision to terminate Lackey was made by Manwaring and Schwartz and was reviewed and approved by Jack Heeter, Vice President of Human Resources for Biomet. *See* DE 32-1 at 19; DE 32-2 at 3, 26. At the time of Lackey's termination, Lackey was forty-five years old. *See* DE 32-1 at 1 (identifying Lackey's date of birth as May 24, 1962).

Schwartz denies having any knowledge of Lackey filing any formal complaints regarding harassment. *See* DE 32-2 at 4. Similarly, Schwartz and Manwaring assert that they were unaware, at the time of Lackey's termination, that Lackey suffered from tendinitis or that Lackey's job responsibilities aggravated her symptoms. *See* DE 32-2 at 4, 27. Schwartz

---

*See* DE 32-1 at 9, 25; DE 32-2 at 27.

[7] In contrast, Lackey's co-worker, Dottie Parker, did come in early, as requested in the email. *See* DE 32-1 at 17. However, Lackey contends that Manwaring specifically discussed the email with Dottie Parker, on December 18, 2011, but did not, similarly, discuss the email with Lackey. *See* DE 32-1 at 17.

additionally notes that, although Lackey had filed a worker's compensation claim in 2002, Lackey's claim was for an injury unrelated to tendinitis. *See* DE 32-2 at 4. Finally, Lackey asserts that she filed a worker's compensation claim for tendinitis but concedes that she filed the claim in late 2009, nearly two years after she was terminated from Biomet. *See* DE 32-1 at 3.

On December 29, 2009, Lackey filed her complaint in this Court, alleging that she was terminated on account of age and gender discrimination and alleging retaliation for reporting a disability and for filing a worker's compensation claim. *See* DE 1.

## IV. Analysis

### A. Standard for Granting Summary Judgment[8]

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010

---

[8] Lackey failed to submit either a response or evidence to support her claims. Accordingly, consistent with Fed. R. Civ. P. 56(e)(2), there is a presumption that summary judgment "should" be entered against Lackey, should the Court consider it appropriate to do so. *See* Fed. R. Civ. P. 56(e)(2).

WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has met this burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper–even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23) (holding that a failure to prove one essential element "necessarily renders all other facts immaterial")).

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994). A court must avoid the temptation to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are

14

jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770; *Waldridge*, 24 F.3d at 920. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

## B. Title VII and ADEA discrimination

Lackey primarily asserts that she was impermissibly terminated on account of her age, gender, and religion. Because the analysis for all three types of discrimination claims is substantially similar under the *McDonnell Douglas* framework, the Court will address all three of Lackey's claims together. *See e.g. Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) (evaluating Title VII claims on account of alleged religious and race discrimination, pursuant to the same analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973)); *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (evaluating discrimination claims on account of alleged race, religion, and gender discrimination pursuant to Title VII and an age discrimination claim pursuant to ADEA under a single *McDonnell Douglas* analysis). Where minor differences exist regarding the types of evidence necessary to establish the various claims, however, the Court will so indicate and evaluate accordingly.

Title VII of the Civil Rights Act of 1964 provides that, "[i]t shall be an unlawful employment practice for an employer. . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating against employees who are forty years or older, on the basis of age. 29 U.S.C. §§ 623(a), 631(a); *Tubergen v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008).

Lackey's claims for discriminatory termination can proceed under either the direct method, by proffering direct or circumstantial evidence that age, gender, or religious discrimination was a motivating factor for the employment decision, or under the indirect, burden-shifting method. *Atanus*, 520 F.3d at 671; 42 U.S.C. § 2000e-2(m) ("an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a *motivating factor* for any employment practice, even though other factors also motivated the practice.") (emphasis added). *See also* Title VII cases: *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 783 (7th Cir. 2007); *Velez v. City of Chi.*, 442 F.3d 1043, 1049 (7th Cir. 2006). *See also* ADEA cases: *Martino v. MCI Commc'ns Servs. Inc.*, 574 F.3d 447, 452 (7th Cir. 2009); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008); *Tubergen*, 517 F.3d at 473-74; *Hemsworth v. Quotesmith*, 476 F.3d 487, 490 (7th Cir. 2007); *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006).

However, unique to Lackey's ADEA discrimination claim, Lackey must additionally establish, by a preponderance of evidence, that age discrimination was the motivating factor for the adverse action taken against her.[9] *Gross v. FBL Fin. Servs. Inc.*, 129 S.Ct. 2343, 2350-52

---

[9] Because the analysis for Lackey's discrimination claims follows the same basic framework, the Court will, henceforth, primarily rely upon citations to cases addressing Title VII discrimination claims. However, parallel legal holdings in cases involving ADEA discrimination, for many of the Court's citations to cases involving Title VII discrimination, can be found in the ADEA cases cited above. Further, where the Court's analysis of Lackey's

(2009); *Martino*, 574 F.3d at 455 (noting that a plaintiff must prove that "but for his age, the adverse action would not have occurred"); *Ray v. Forest River, Inc.*, 2010 WL 3167426 *7 (N.D.Ind. 2010); *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 301 (7th Cir. 1996). *See also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Faas*, 532 F.3d at 641 (holding, pre-*Gross*, that a plaintiff must establish that the plaintiff's age "actually motivated" the employer's decision to take adverse action against the plaintiff); *Hemsworth*, 476 F.3d at 490 (employee's protected trait "must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome.").

### 1. *Direct Method*

Under the direct method of proof, Lackey can show either an admission by the decision maker that her actions were based on the prohibited discrimination or a convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action. *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009); *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes v. Ill. Dept. Of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Because admissions of discriminatory intent are rare, circumstantial evidence is more typically proffered to show discriminatory intent under the direct method of proof. *Darchak*, 580 F.3d at 631 (noting examples of circumstantial evidence, including: suspicious timing, ambiguous oral or written statements, statistical evidence of disparate treatment, and passing over otherwise qualified candidates in hiring). *See also Lewis v.*

ADEA claim differs from the Title VII analysis, the Court will cite applicable cases addressing ADEA discrimination claims.

*Sch. Dist. #70*, 523 F.3d 730, 742 (7th Cir. 2008) ("Circumstantial evidence allows the trier of fact to infer intentional discrimination by the decisionmaker.")

Lackey does not offer direct evidence of either gender or religious discrimination. As such, Lackey must proceed under the indirect method to factually establish these claims.

In contrast, Lackey does assert that Manwaring made specific statements of age discrimination towards her. While Lackey claims that Manwaring made numerous statement related to Lackey's age, the only statement that Lackey specifically attributes to Manwaring is "out with the old, in with the new". *See* DE 32-1 at 21. Assuming that Manwaring did indeed make this statement,[10] there is no evidence that Manwaring intended the statement to insinuate age discrimination by Biomet's new management or herself.

To begin, Lackey relies solely on her subjective belief regarding the intent of Manwaring's statement, which is insufficient to create a genuine issue of material fact regarding the cause of Lackey's termination. *See Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996) ("subjective beliefs of the plaintiff are insufficient to create a genuine issue of material fact"). This is particularly troublesome in this case, given the additional facts conceded by Lackey. For instance, Lackey herself asserts that, following a change in management, Biomet instituted a new policy of "lean management", wherein cost-saving measures were implemented company-wide. *See* DE 32-1 at 11-13, 21; DE 32-2 at 27. Given this unchallenged fact, it appears, at least equally, likely that Manwaring's statement reflected that same change in Biomet's policies, motivated by a desire to improve operating

---

[10] The Court notes that Manwaring disputes that she made any discriminatory statements towards Lackey. *See* DE 32-2 at 26. However, considering the evidence in a light most favorable to Lackey, the Court entertains the possibility that, at least, this particular statement may have been directed towards Lackey.

efficiencies rather than a discriminatory animus against older employees, on the part of Biomet's new management. In addition, Lackey concedes that Manwaring only made these comments towards her and not to the other, older employees in her department, further belying that Biomet's management or Manwaring were motivated by age discrimination. *See* DE 32-1 at 21.

Additionally, in light of the other uncontested facts, the comment appears to be more akin to a "stray remark", unrelated to Biomet's decision to terminate Lackey's employment for insubordination. Lackey claims that the comment was made to her privately rather than contemporaneously with the disciplinary actions taken by Manwaring and Schwartz on account of Lackey's insubordination. *See* Lackey's Deposition, DE 32-1 at 21. When allegedly discriminatory comments are temporally removed from the termination decision or tenuously connected to the same, such comments may be properly considered "stray work place remarks, rather than evidence of a thought process behind [the Plaintiff's] termination." *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 788 (7th Cir. 2004) (citing *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 576 (7th Cir. 2003)). *See also Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) ("[Derogatory] comments cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question.").

Regardless of how this statement is considered, however, the statement can not, by itself, establish that Biomet was "actually motivated" by discriminatory animus when Biomet decided to terminate Lackey's employment. Biomet has articulated a non-discriminatory motive for Lackey's termination, which Lackey has failed to show is pretextual. Specifically, Biomet has provided evidence that Lackey was terminated, not on account of her age, but, rather, for two

instances of insubordinate behavior. *See* DE 32-1 at 10, 16, 26-27; DE 32-2 at 3, 26-27 (Lackey was suspended for three days for working unauthorized overtime and sending an email against company policy). *See also* DE 32-1 at 17, 19; DE 32-2 at 3, 23, 26 (Lackey was terminated for failing to come into work early as requested). Given Biomet's articulation of a factually-unrebutted, non-discriminatory motive, the proffered ambiguous statement, by itself, can not establish that Lackey was terminated "but for" her age, a factual requirement in every ADEA discrimination case. *Gross*, 129 S.Ct. at 2350-52; *Hazen Paper Co.*, 507 U.S. at 611; *Martino*, 574 F.3d at 455; *Testerman*, 98 F.3d at 301.

Consequently, because Lackey has failed to present sufficient evidence to establish a discrimination claim under the direct method of proof, the Court must consider whether Lackey has provided sufficient evidence under the indirect, burden-shifting method of proof to withstand Biomet's motion for summary judgment.

### 2. Indirect Method

Under the indirect method of proof, Lackey bears the initial burden of establishing a *prima facie* case of age, gender, and religious discrimination. *McDonnell Douglas Corp*, 411 U.S. at 802-04; *Johnson v. Nordstrom, Inc*., 260 F.3d 727, 732 (7th Cir. 2001). To do so, Lackey must establish, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) she was meeting his employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees outside of her protected class. *Velez v. City of Chi.*, 442 F.3d 1043, 1049-50 (7th Cir. 2006); *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 703-04 (7th Cir. 2003); *Dunn v. Nordstrom, Inc.,* 260 F.3d 778, 784 (7th Cir. 2001).

Biomet does not dispute that Lackey is a member of a protected class in relation to all three claims of discrimination. Further, Biomet does not dispute that Lackey suffered a material, adverse employment action when she was terminated from her employment. As such, the first and third prongs of Lackey's *prima facie* discrimination claims are satisfied under both Title VII and the ADEA. However, Lackey has not submitted sufficient evidence to establish the remaining prongs.

To meet the second prong of a *prima facie* discrimination claim, Lackey must establish that she was performing her job to Biomet's legitimate expectations at the time of her termination. *Velez*, 442 F.3d at 1050 (Title VII); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2006) (Title VII retaliation); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328-29 (7th Cir. 2002) (Title VII and ADEA).

Biomet contends that Lackey was not meeting Biomet's legitimate demands, as evidenced by the two disciplinary actions made in the last two months of Lackey's employment.[11] In support, Biomet notes that, on November 27, 2007, Biomet suspended Lackey for three days for insubordination. *See* DE 32-1 at 10, 16, 26-27; DE 32-2 at 3, 26. The corresponding written warning articulates that the suspension was the result of Lackey working unauthorized overtime and sending an email against company policy, despite prior instructions not to engage in such behaviors. *Id.* The warning also notified Lackey that further insubordination would be grounds for immediate termination. *See* DE 32-1 at 10, 26-27.

---

[11] These facts, left unrebutted, are sufficient to establish that Lackey was not meeting Biomet' legitimate employment expectations. *See Barkat v. Excelsior Mfg. & Supply Co.*, 1995 WL 622392 at **4-5 (N.D.Ill. 1995) (plaintiff was not meeting legitimate expectations when he refused to work a night shift as requested by his employer); *Holloway v. Ind. Dept. of Transp.*, 2000 WL 222558 at *2 (7th Cir. 2000) (unpublished opinion) (plaintiff was not meeting his employer's legitimate expectations by not responding to his employer's order to return to work).

Biomet additionally points out that Lackey's suspension came less than two weeks after Lackey had been specifically warned by Schwartz that failure to perform tasks assigned by Manwaring could result in termination for insubordination. *See* DE 32-1 at 14, 27; DE 32-2 at 2, 25. Further, Biomet notes that, less than a month later, on December 19, 2007, Lackey failed to respond to Manwaring's prior request that Lackey arrive to work early and was, therefore, immediately terminated for insubordination. *See* DE 32-1 at 17, 19; DE 32-2 at 3, 23, 26.

Lackey does not dispute that Biomet took the aforementioned disciplinary actions against her; nor does Lackey refute, with either argument or evidence, Biomet's stated reasons for taking such action. In addition, Lackey has submitted no evidence to suggest that, despite being twice disciplined for insubordination, Lackey was, somehow, still meeting Biomet's legitimate employment expectations. Instead, Biomet's contention that Lackey was not meeting its legitimate expectations stands completely unrebutted by Lackey. Consequently, the evidence suggests only one outcome: Lackey was not meeting Biomet's expectations, on account of Lackey's repeated instances of insubordination; and Lackey's employment at Biomet was terminated as a result.

To meet the fourth prong of the *prima facie* case, Lackey must present sufficient evidence of a similarly-situated employee, outside of her protected class, who was treated more favorably than she was at the time of her termination.[12] *See* Title VII cases: *Patterson v. Avery*

---

[12] The Court recognizes that the fourth element of an ADEA *prima facie* case does not always necessitate a showing of a similarly-situated younger employee and can, instead, be demonstrated by other means in some circumstances such as a mini-reduction-in-force case. *See e.g. Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693-94 (7th Cir. 2000) (explaining the differing analyses of the fourth element, under the ADEA, in cases involving: a termination and replacement, a traditional reduction in force, or a mini-reduction in force). However, the Court considers the immediate case to be a "traditional" ADEA case, wherein Lackey was allegedly terminated for poor performance rather than as a cost-saving measure. Accordingly, the Court considers the *Faas* line of cases to be controlling. *See e.g. Faas*, 532 F.3d at 641-43; *Yee*, 2010 WL 1640192 at **23-24; *Miller*, 179 Fed.Appx. at 969 (unpublished opinion).

*Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); *Grayson v. O'Neill*, 308 F.3d 808, 818-19

(7th Cir.2002); *Peirick v. Ind. Univ.-Biomet Univ. Indianapolis Athletics Dept.*, 510 F.3d 681,

688 (7th Cir. 2007); *Keri v. Bd. of Trs. of Biomet Univ.*, 458 F.3d 620, 644 (7th Cir. 2006). *See*

*also* ADEA cases involving terminations for allegedly poor performance: *Faas*, 532 F.3d at 641-

43; *Yee v. UBS O'Connor, LLC*, 2010 WL 1640192, **23-24 (N.D.Ill. 2010) ("the issue [in

relation to the fourth element] is whether [the plaintiff's] replacements had better qualifications

or performance records than [the plaintiff]"); *Miller v. Adminastar Fed. Inc.*, 179 Fed.Appx. 967,

969 (7th Cir. 2006) (unpublished opinion); *Miller v. Adminastar Fed. Inc.*, 2005 WL 1071036 *

5 (S.D.Ind. 2005); *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir. 1996).

    To sufficiently establish similarly-situated "comparators", Lackey must show that there is

someone, not of her protected class,[13] who is directly comparable to her in all material aspects.

*Patterson*, 281 F.3d at 680; *Grayson*, 308 F.3d at 819. In particular, Lackey must identify

employees, not of her protected class, who were similarly situated with respect to performance,

qualifications and conduct; and she must show that the relevant aspects of their employment

---

    Although Lackey notes Biomet's policy of "lean management" which caused the layoffs of numerous employees company-wide, Lackey has not submitted any evidence to establish that older employees were disproportionally targeted for layoffs or that her employment position was terminated to save costs to the company. Further, even if Lackey had alleged such a discriminatory economic policy, she certainly has not submitted any evidence to substantiate her allegations. *Brettler v. Purdue Univ.*, 408 F.Supp.2d 640, 664 n.12 (7th Cir. 2006); *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment").

    [13] In some cases, a plaintiff may establish the last element of an ADEA discrimination claim by demonstrating that she was treated less favorably than either a similarly situated employee, outside of her protected class or a similarly-situated, "substantially younger" employee. *Martino*, 574 F.3d at 453; *Faas*, 532 F.3d at 641-42; *Tubergen*, 517 F.3d at 473; *Hemsworth*, 476 F.3d at 492. "Substantially younger" employees are employees within the protected class and at least ten years younger than the Plaintiff. *See Martino*, 574 F.3d at 454 (7th Cir. 2009); *Tubergen*, 517 F.3d at 475 n.4. However, given that Lackey was forty-five at the time of her termination and the ADEA protected class includes individuals over the age of forty, *see* 29 U.S.C. § 631(a), Lackey can not present substantially younger employees as comparators and must, instead, present evidence of a similarly situated employee under the age of forty.

were nearly identical to her own.[14]  *Peirick*, 510 F.3d at 688; *Keri*, 458 F.3d at 644.  *See also Faas*, 532 F.3d at 642 (plaintiff must proffer a younger employee who has a "comparable set of failings" as himself but was treated more favorably).

Lackey has not identified a single employee who is either male, non-Christian, or under the age of forty who was treated more favorably than herself.  In particular, Lackey has not put forth any evidence that such an individual was similarly engaged in insubordination but was not terminated.  *Peirick*, 510 F.3d at 688; *Keri*, 458 F.3d at 644 (comparator must be shown as similar in terms of performance, qualifications, and conduct); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 274 (7th Cir. 2004) (stating that plaintiff must establish that he is similarly situated to other employees by presenting evidence of similar attributes and a cogent analysis); *Radue*, 219 F.3d at 617-19.  Lackey's failure to offer relevant comparator evidence, in addition to Lackey's failure to factually establish that she was meeting Biomet's legitimate expectations, further "dooms her Title VII and ADEA claims."  *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002).

In sum, Lackey clearly can not establish two prongs of a *prima facie* discrimination case, under either Title VII or the ADEA.  Consequently, the Court need not further evaluate Lackey's discrimination claims under the shifting-burdens, framework of analysis.  Nevertheless, because the analysis is an easy one in Lackey's case, the Court will address it briefly.

---

[14] In determining whether two employees are similarly-situated, a court must look to all relevant factors, the number of which depends on the context of the case.  *Peirick*, 510 F.3d at 688; *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).  However, identifying appropriate comparators often requires a showing that the proffered employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Peirick*, 510 F.3d at 688; *Keri*, 458 F.3d at 644; *Radue*, 219 F.3d at 617-18. *See also Young v. Digger Specialties, Inc.*, 2010 WL 3940455 at *5 (N.D. Ind. 2010) (ADEA case).

In relation to all of Lackey's discrimination claims, Biomet has articulated a non-discriminatory motive for Lackey's termination, specifically Lackey's repeated acts of insubordination. *See* DE 32-1 at 10, 16, 26-27; DE 32-2 at 3, 26-27 (Lackey was suspended for three days for working unauthorized overtime and sending an email against company policy). *See also* DE 32-1 at 17, 19; DE 32-2 at 3, 23, 26 (Lackey was terminated for failing to come into work early as requested). Once, as here, Biomet has offered a non-discriminatory justification, the burden shifts back to Lackey to present sufficient rebuttal evidence to create a triable issue concerning whether the Biomet's proffered reason is merely pretextual.[15] *Keri*, 458 F.3d at 643-44 (Title VII); *Faas*, 532 F.3d at 642 (ADEA). In this regard, Lackey had failed to submit either evidence or argument to establish that Biomet's stated reason for her termination is pretextual. Consequently, Biomet's stated reason for Lackey's termination, insubordination, stands wholly unrebutted.

As a result, because Lackey has failed to submit sufficient evidence to establish a *prima facie* case of discrimination and has failed to rebut Biomet's stated reasons for her termination as pretextual, Lackey's discrimination claims under the Title VII and the ADEA can not survive summary judgment.

## C. ADA Retaliation

---

[15]"Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Keri*, 458 F.3d at 644. *See also Faas*, 532 F.3d at 642 ("[p]retext means a dishonest explanation, a lie rather than an oddity or an error."); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001) ("pretext means deceit used to cover one's tracks."). Accordingly, the question that this Court must address is not whether the Defendant employer's proffered explanation was well-reasoned, wise or accurate. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). Rather, this Court's inquiry focuses on whether the employer's reason is honest. *Id.*; *Peirick*, 510 F.3d at 692; *Faas*, 532 F.3d at 642 ("showing pretext requires proof that the defendant's explanation is unworthy of credence.").

In her complaint, Lackey additionally asserts that she suffered retaliation[16] on account of reporting tendinitis in her wrist. Under the Americans with Disabilities Act ("ADA"), it is unlawful for any person to discriminate against an individual for "oppos[ing] any act or practice made unlawful by [the Act] or because such individual made a charge . . . under [the Act]." 42 U.S.C. § 12203(a). In general, a plaintiff can proceed under either a direct or indirect method of proof to establish her claim of retaliation. *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008); *Sissom v. Purdue Univ.*, 2006 WL 897572, *10 (N.D.Ind. 2006).[17] However, because the Court has already determined that Lackey can not factually establish that she was meeting Biomet's legitimate expectations and can not identify relevant comparators, Lackey's retaliation claim can also not succeed under the indirect method of proof.[18] Consequently, Lackey must establish her ADA retaliation claim under the direct method.

Under the direct method of proof, Lackey must establish that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action subsequent to her participation in the activity; and (3) there was a causal connection between the adverse action and the protected activity. *Metzger,* 519 F.3d at 681; *Sissom*, 2006 WL 897572 at

---

[16] In its summary judgment motion, Biomet evaluates Lackey's ADA claim as both a discrimination and retaliation claim. However, Lackey's complaint clearly speaks in terms of retaliation rather than in terms of disability discrimination. *See* DE 1 at 4 ("Your plaintiff demonstrates that her discharge was solely in retaliation for reporting to her manager Katrina Manwaring on several occasions about the pain and soreness in her arm and wrist . . . Deborah Lackey also completed a report of the injury on a form provided by her department manager. In retaliation Katrina Manwaring initiated aggressive harassment for filing the report."). Accordingly, the Court considers and evaluates Lackey's claim solely as an ADA retaliation claim.

[17] The Court's retaliation analysis primarily draws from Title VII retaliation cases. However, the analysis is the same under both Title VII and the ADA. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998); *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095-96 (7th Cir. 1998).

[18] Under the indirect method of proof, the elements of a *prima facie* case of retaliation include: (1) participation in statutorily protected activity; (2) a materially adverse employment action; (3) meeting the employer's legitimate expectations; and (4) treatment less favorable to a similarly situated employee who did not engage in the statutorily protected activity. *Metzger*, 519 F.3d at 681.

*10.  *See also Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095-96 (7th Cir. 1998) (ADA).


In her Complaint, Lackey claims that Manwaring began assigning Lackey to additional shipping tasks after Lackey complained of wrist pain to Manwaring and Biomet's Human Resources Department.  *See* DE 1 at 4, 10.  However, as discussed previously,[19] Lackey has failed to submit any evidence, in response to Biomet's motion for summary judgment, to substantiate her factual assertions.  At this stage of the litigation, Lackey must provide specific evidence to support her factual assertions and can not rely solely on her pleadings to carry her ADA retaliation claim.  *See* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or otherwise provided in this rule-set out specific facts showing a genuine issue for trial.").  Without evidence to support her factual assertions, Lackey cannot establish any element of the *prima facie* case.

This is especially true in light of the contrary evidence submitted by Biomet.  For instance, in a signed affidavit, Schwartz denies having any knowledge of either Lackey's tendinitis or that Lackey's alleged symptoms were aggravated by Manwaring's assigned tasks.  *See* Schwartz Aff., DE 32-2 at 4.  Similarly, Manwaring denies, in a signed affidavit, having any knowledge that Lackey's alleged symptoms were aggravated by her assigned tasks.  *See* Manwaring Aff., DE 32-2 at 27.  These properly supported facts, left unrebutted, prevent Lackey

---

[19] *See supra* note 5.

from establishing the requisite causal connection between her actions and her termination.[20]  *See*

*Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7thCir. 2004) (holding, pursuant to analogous

Title VII retaliation analysis, that an employer must have actual knowledge of a plaintiff's

complaints for her decision to be retaliatory).

Simply put, Lackey's failure to submit evidence to support her factual allegations can

neither meet her burden to establish a *prima facie* case of ADA retaliation nor rebut Biomet's

evidence to the contrary.

**D.  *Retaliatory Discharge***

Finally, Lackey also asserts a claim for retaliatory discharge on account of her filing of

an workers' compensation claim.[21]  In general, Indiana adheres to the employment-at-will

doctrine, whereby an employment contract is terminable at the will of either party.  *Hudson v.*

*Wal-Mart Stores*, 412 F.3d 781, 785 (7th Cir. 2005); *Crye v. Caterpillar, Inc.*, 2008 WL 5111349

at *7 (N.D.Ind. 2008) ("employers can generally terminate an employment at any time, for a

good reason, bad reason, or no reason at all"); *Settele v. Walgreens Co.*, 2007 WL 1970954 at *3

---

[20] Further, even if Lackey had submitted evidence to support her factual allegations, the Court still doubts whether Lackey could demonstrate the requisite causal connection between her complaints of pain and her termination, given Biomet's repeated and intervening disciplinary actions taken against Lackey on account of insubordination.

[21] Although it is not required to, the Court elects to exercise supplemental jurisdiction over Lackey's state law claim.  The Seventh Circuit has recognized that federal courts' adjudication of state law claims is warranted when: (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244,1251 (7th Cir. 1994).
   The Court finds at least the latter two of these grounds to be applicable in this case.  In particular, the Court notes that Lackey's state-law claim has been pending in this Court since December of 2009 and that the Court has devoted substantial time and resources to this case.  Further, as discussed in greater detail below, based on the evidence presented, the Court concludes that Lackey cannot factually establish a *prima facie* case of her *Frampton* claim, given that Lackey did not make a worker's compensation claim until two years after her termination.

(N.D.Ind. 2007). However, the Indiana Supreme Court has carved out an exception to this rule, acknowledging a cause of action for employees discharged in retaliation for filing a workers' compensation claim. *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425, 428 (Ind. 1973). *See also Hudson*, 412 F.3d at 785 (noting that such claims are called "*Frampton*" claims in Indiana courts); *Crye*, 2008 WL 5111349 at *7.

Like other retaliation causes of action, to establish a *prima facie* case of retaliatory discharge, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Settele*, 2007 WL 1970954 at *3 (noting that a plaintiff may submit either direct or indirect evidence to establish the requisite causal connection). *See also Hudson*, 412 F.3d at 785; *Crye*, 2008 WL 5111349 at *7. If the plaintiff establishes these elements, the defendant has the burden to produce a legitimate, nondiscriminatory reason for its actions. *Settele*, 2007 WL 1970954 at *3. Once such a reason is proffered, the plaintiff must prove that the employer's stated reason for its action is pretextual. *Id.*

Lackey can not establish a *prima facie* case for retaliatory discharge because Lackey has not presented evidence that she engaged in statutorily protected activity. Lackey admits that she did not file a worker's compensation claim, in relation to her tendinitis, until nearly two years after her termination from Biomet. *See* DE 32-1 at 3. Without protected activity there can be no *prima facie* case for retaliatory discharge. *Frampton*, 297 N.E.2d at 428 (holding that retaliatory discharge is actionable on account of filing claims pursuant to the Indiana Worker's Compensation Act); *Settele*, 2007 WL 1970954 at *3 (noting the same and laying out the criteria for a *prima facie* case).

## V. Conclusion

For the aforementioned reasons, the Court now **DENIES** Lackey's motion for interlocutory appeal. [DE 56]. In addition, the Court now **GRANTS** Biomet's motion for summary judgment in relation to all of Lackey's claims. [DE 31]. Accordingly, the Clerk is **INSTRUCTED** to term this case.

SO ORDERED.

ENTERED:   July 25, 2011

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court